OPINION
{¶ 1} Appellant, Jerome N. Jackson ("Jackson"), appeals the April 28, 2004 judgment of conviction and the June 17, 2004 judgment of sentencing of the Common Pleas Court of Allen County.
 {¶ 2} On November 21, 2002, officers assigned to the Lima/Allen County Narcotics Task Force conducted a buy bust operation at 1305 West High Street in Lima, Ohio. A confidential informant was in the residence placing monitored phone calls to specific drug dealers in an effort to purchase drugs and have them delivered to the West High Street location. When a drug dealer would arrive at the residence with the drugs, the confidential informant would assist in getting the dealer into the residence where law enforcement officers would then arrest the suspect.
 {¶ 3} On the night of November 21, 2002, the confidential informant contacted Garrett Turner ("Turner"). During the conversation, Turner indicated that he could get three ounces of crack cocaine for the confidential informant from other sources, one of which was Turner's cousin. It was subsequently determined that the cousin Turner spoke of was Jackson. The confidential informant told Turner he had approximately $3,300.00 and told Turner to get whatever he could for the amount of money. Shortly thereafter, Turner arrived at 1305 West High Street and was arrested by law enforcement officers. Turner told the officers that he did not have the cocaine on his person, but that it was out in the car with another person. Turner told the officers that this other person with the drugs was in a maroon car.
 {¶ 4} The law enforcement officers in the residence relayed the information given by Turner to officers outside the residence. A dark red vehicle was parked in front of the residence, with Jackson as the driver and sole occupant of the vehicle. Law enforcement officers immediately surrounded the car occupied by Jackson. Deputy Brock Douglas pulled a marked police cruiser with emergency lights activated directly in front of Jackson's vehicle, blocking it. At approximately the same time, Major Larry Van Horn and Investigator Tom McNamara approached the rear of Jackson's vehicle in an unmarked car. This vehicle blocked Jackson's car from the rear. Deputy Douglas, who was in full uniform, approached the driver's side of Jackson's vehicle and requested that Jackson turn the car off. Major Van Horn, wearing a "raid" jacket that bore the letters "DEA" and a badge, approached the passenger side of Jackson's car. Investigator McNamara, dressed in a similar manner as Van Horn, approached the driver's side of Jackson's car.
 {¶ 5} The law enforcement officers informed Jackson that he was under arrest and ordered him to put his hands up. At this time, Greg Roberts, a police officer that had been inside the residence, came out of the residence and approached the driver's side of Jackson's vehicle. Roberts told Jackson he was under arrest and ordered him to shut off the car and unlock the door. Jackson refused to comply with the officer's instructions and put the car in reverse and accelerated. Roberts broke the driver's side window of the vehicle with his flashlight. Jackson drove the vehicle over a curb in the direction of Major Van Horn. Jackson then drove through the tree lawn to the next house and then cut back out onto West High Street. The officers fired several shots at Jackson's vehicle, which continued down High Street at a high rate of speed.
 {¶ 6} On January 16, 2003, Jackson was indicted on one count of escape, a felony of the second degree in violation R.C. 2921.34(A)(1) and (C)(2)(a), and one count of felonious assault on a police officer, a felony of the first degree in violation of R.C. 2903.11(A)(2). A jury trial was held on April 26, 2004. The jury returned a guilty verdict on both counts. A presentence investigation report was ordered and a sentencing hearing was held on June 10, 2004. The trial court sentenced Jackson to four years on the charge of escape and to eight years on the charge of felonious assault. The trial court ordered the sentences to be served consecutively. It is from this judgment that Jackson now appeals asserting the following two assignments of error.
The jury verdict is not supported by sufficient evidence and is againstthe manifest weight of the evidence.
 The trial court committed an error of law by imposing a consecutivesentence.
 {¶ 7} In his first assignment of error, Jackson argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. In State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus, the Ohio Supreme Court stated that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." An appellate court can determine that a judgment of the trial court is supported by sufficient evidence and yet still conclude that the judgment is against the manifest weight of the evidence. Id. at 387. Therefore, we will address Jackson's claims of insufficiency of the evidence to support the conviction and the conviction being against the manifest weight of the evidence separately.
 {¶ 8} We begin by discussing the sufficiency of the evidence. Determining whether the evidence is legally sufficient to support a verdict is a question of law. Thompkins, 78 Ohio St.3d at 386. In order to reverse a trial court's judgment on the basis that the judgment is not sustained by sufficient evidence, a majority of the panel must concur in the determination. Id. at paragraph three of the syllabus. In reviewing a challenge to the sufficiency of the evidence supporting a conviction, a reviewing court must determine whether the state has met its burden of production at trial. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, 574 N.E.2d 492. On review for sufficiency, courts do not assess whether the state's evidence is to be believed, only whether, if believed, the evidence against the defendant would support a conviction. Id.
 {¶ 9} We will address the two offenses Jackson was charged with separately. We begin with the charge of escape. R.C. 2921.34 governs the offense of escape and provides that:
(A)(1) No person, knowing the person is under detention or beingreckless in that regard, shall purposely break or attempt to break thedetention * * *.
* * *
(C)(2) If the offender, at the time of the commission of the offense,was under detention in any other manner * * *, escape is one of thefollowing:
* * *
(c) A felony of the second degree, when the most serious offense forwhich the person was under detention * * * is * * * a felony of the firstor second degree * * *[.]
Pursuant to R.C. 2921.01(E), detention means arrest, among other forms of confinement. Detention signifies "not a place or means of confinement, but a status. It constitutes the state of being held in some form of legal custody." State v. Shook (1975), 45 Ohio App.2d 32, 34,340 N.E.2d 423.
 {¶ 10} In order for Jackson to be found guilty of escape, the prosecution need not prove that Jackson was guilty beyond a reasonable doubt of a drug offense that constituted a felony of the first degree. Rather, R.C. 2921.34(A)(1) only requires that Jackson was under detention for a first degree offense at the time he escaped from officers. In order to detain Jackson, law enforcement officers only needed probable cause to believe Jackson possessed drugs.
 {¶ 11} Jackson argues that the evidence presented at trial fails to show that he was in possession of drugs or that law enforcement officers had probable cause to arrest him. Therefore, Jackson asserts that the state did not prove the underlying requirement of the escape charge; to wit, that Jackson was under detention for a felony offense at the time of the incident in question.
 {¶ 12} A review of the facts leading up to law enforcement officers' attempted arrest of Jackson shows that officers had probable cause to detain Jackson. Officers were conducting bust buy drug transactions involving a confidential informant on November 21, 2002. One of the individuals contacted by the confidential informant was Turner, who relayed to the confidential informant that he had two sources from whom he could obtain the requested cocaine. Turner indicated that one of his drug sources was his cousin who had previously gotten busted with drugs on a trip to Chicago. Law enforcement officers subsequently linked this description to Jackson.
 {¶ 13} Turner later arrived at the residence where the confidential informant was waiting. Upon being approached by law enforcement officers, Turner stated that he did not have the drugs on his person and that he only came in to make sure the confidential informant had the money. Turner further stated that another guy in a maroon car parked in front of the residence had the cocaine. This information was relayed to law enforcement officers outside the residence. A dark red vehicle parked in front of the residence was immediately blocked by two law enforcement vehicles. Jackson was the driver and sole occupant of the vehicle. At this time, law enforcement officers had probable cause to believe that Jackson had cocaine inside the vehicle. Therefore, officers had probable cause to detain Jackson.
 {¶ 14} Jackson asserts that since the cocaine was later discovered to be in Turner's possession it is obvious that the information given by Turner was false and cannot be the basis of the probable cause for Jackson's detention. However, the probable cause for purposes of detention is assessed at the time of the detention and not from facts that are ascertained afterwards. We conclude that probable cause existed for officers to detain Jackson.
 {¶ 15} Since officers had probable cause to detain Jackson, we now focus on whether Jackson had knowledge that he was being detained. The state presented evidence that Deputy Douglas parked his police cruiser with emergency lights activated directly in front of Jackson's vehicle. Douglas testified that he was in full uniform when he approached Jackson's vehicle and that he identified himself as a police officer. Douglas also testified that he gave Jackson orders to put his hands in the air and to shut off his vehicle and unlock the door. The state also presented evidence that Investigator McNamara and Major Van Horn pulled their vehicle directly behind Jackson's vehicle. McNamara and Van Horn testified that they were wearing jackets with iridescent lettering of "DEA" on the sides and back of the jackets. McNamara and Van Horn also testified that they were wearing badges and identified themselves as police officers to Jackson. Both officers testified that Jackson raised his arms in response to officers ordering him to put his hands in the air. Van Horn testified that he made eye contact with Jackson and after he ordered Jackson to put his hands in the air, Jackson complied.
 {¶ 16} In addition, Officer Roberts testified that he came outside of the residence at 1305 West High Street to assist officers in arresting Jackson. Roberts testified that he identified himself as a police officer to Jackson and informed him that he was under arrest. Roberts also testified that he warned Jackson that if he did not shut the car off and unlock the door that Roberts would break the window with his flashlight. The evidence further showed that Jackson drove his vehicle away from the officers instead of complying with the officers' orders to shut the car off and unlock the door. This evidence presented by the state is sufficient to support Jackson's conviction on the charge of escape.
 {¶ 17} The offense of felonious assault is governed by R.C. 2903.11, which provides:
(A) No person shall knowingly do either of the following:
* * *
(2) Cause or attempt to cause serious physical harm to another* * * by means of a deadly weapon or dangerous ordnance[.]
* * *
(D) Whoever violates this section is guilty of felonious assault, afelony of the second degree. If the victim of a violation of division (A)of this section is a peace officer, felonious assault is a felony of thefirst degree. Pursuant to R.C. 2923.11(A), "deadly weapon" means "any instrument, device or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 18} Jackson argues that the evidence fails to show he attempted to cause physical harm to Major Van Horn. Jackson asserts that he only intended to leave the scene when he put his vehicle in gear and drove away. Jackson further asserts that due to his vehicle being blocked from the front and rear by police vehicles and the wet weather conditions it was not easy to maneuver his vehicle.
 {¶ 19} R.C. 2903.11 requires that Jackson knowingly attempted to cause physical harm to a peace officer by means of a deadly weapon or ordnance. We have already established that there was sufficient evidence to support the element that Jackson was aware that the individuals standing around his vehicle were law enforcement officers. Further, this Court has previously determined that "[a] motor vehicle is capable of inflicting death and can be used as a weapon[.]" State v. Overmyer, 3d Dist. No. 11-2000-07, 2000-Ohio-1785. We must now determine whether the evidence was sufficient to support the elements of the offense that Jackson knowingly attempted to cause physical harm.
 {¶ 20} The testimony of each of the law enforcement officers revealed that the officers believed Jackson's vehicle had either hit Major Van Horn or almost hit him. Van Horn was standing on the passenger side of the car during the incident. Officer Roberts testified that Jackson put the car in gear, spun the tires and went over the curb and into the tree lawn, right in the path of Van Horn. Deputy Douglas testified that Jackson quickly backed up the vehicle in the direction of Van Horn. Douglas testified that he thought Van Horn was being run over. Investigator McNamara testified that Jackson said "fuck you" to the officers before he put the car in reverse. McNamara testified that Jackson's vehicle sped up as it headed towards Van Horn. McNamara further testified that he believed Van Horn had been hit by Jackson's vehicle because he saw Van Horn fall down. Finally, Van Horn testified that Jackson put the car in reverse and the tires began to spin and the vehicle jerked towards him. Van Horn testified that he made eye contact with Jackson right before the vehicle sped towards him. Van Horn testified that he quickly stepped back over the curb and dropped his hands to his knees. Van Horn further stated that he was pelted with mud and stones from the tires of Jackson's vehicle.
 {¶ 21} This evidence presented by the state established the elements of the offense and was sufficient to support Jackson's conviction of felonious assault. Therefore, we conclude that the state presented sufficient evidence on the charges of escape and felonious assault.
 {¶ 22} In order for an appellate court to reverse the trial court's judgment on the basis that the conviction is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. Thompkins,78 Ohio St.3d at 389.
Weight of the evidence concerns `the inclination of the greater amountof credible evidence, offered in a trial, to support one side of theissue rather than the other. It indicates clearly to the jury that theparty having the burden of the proof will be entitled to their verdict,if, on weighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to be establishedbefore them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'
Id. at 387 (citations omitted). To reverse a conviction on the manifest weight of the evidence, "the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice * * *." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 23} After reviewing the record in this case, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The state presented the testimony of four officers who were present during the incident. The testimony of each of these four officers was substantially consistent with the testimony of the other officers. Jackson was the only witness presented by the defense. Jackson's testimony contradicted virtually everything that was presented in the testimony of the officers. The jury was entitled to find greater credibility in the testimony of the state's witnesses than in the testimony of Jackson.
 {¶ 24} With regard to the charge of escape, Jackson presented his defense that he did not know that the individuals around his vehicle were law enforcement officers. Jackson testified that he thought the men were "thugs" with guns that were going to rob him. Jackson testified that he did not see anyone in a police uniform or DEA jacket and that he did not see a police vehicle with emergency lights activated. Jackson did not recall anyone identifying themselves as police or ordering him to raise his hands. Jackson also testified that he never did raise his hands. Jackson testified that he didn't get the chance to see any of the faces of the individuals. Jackson only remembered one individual telling him to "get out of the fucking car" and then immediately shooting him. Tr. 269.
 {¶ 25} Jackson's credibility was further diminished when he testified that he was shot in the knee but did not receive any treatment for the injury until over a year after the incident. Jackson also admitted that he never called the police or filed a police report regarding the incident even though he had claimed to be shot by "thugs." Jackson admitted to driving away from the scene.
 {¶ 26} Based upon the testimony presented at trial, a reasonable juror could conclude that Jackson had knowledge of his detention and fled from the officers. In weighing the credibility, the jury was free to disregard Jackson's testimony and accept the version of facts presented in the testimony of the law enforcement officers. Therefore, the jury's finding of guilt on the charge of escape is not against the manifest weight of the evidence.
 {¶ 27} Further, based upon the testimony of the four officers, a reasonable juror could conclude that Jackson had attempted to cause serious physical injury by attempting to strike Van Horn with his vehicle. Jackson testified that even though he was in fear of his life, he did not speed away, rather he pulled away slowly. Jackson did not recall seeing the tree lawn that he allegedly ran over with his vehicle. Jackson's testimony also contradicted the officers' testimony regarding how long the whole incident lasted and which window of the vehicle was busted by Officer Roberts. In weighing the credibility of the witnesses, the jury was free to disregard Jackson's testimony and accept the version of facts presented in the testimony of the law enforcement officers. Therefore, the jury's finding of guilt on the charge of felonious assault is not against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.
 {¶ 28} In his second assignment of error, Jackson argues that the trial court made erroneous findings and failed to give its reasons for imposing a consecutive sentence. Specifically, Jackson argues that the seriousness factors considered by the trial court are not supported by the record.
 {¶ 29} The structure of Ohio felony sentencing law provides that the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12,2929.13, and 2929.14, determine a particular sentence. State v. Martin,136 Ohio App.3d 355, 362, 1999-Ohio-814, 736 N.E.2d 907. Compliance with those sentencing statutes is required. Id. Accordingly, the trial court must set forth the statutorily mandated findings and, when necessary, articulate on the record the particular reasons for making those findings. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473, paragraph one and two of the syllabus.
 {¶ 30} An appellate court may modify a trial court's sentence only if it clearly and convincingly finds either that the record does not support the sentencing court's findings or that the sentence is contrary to the law. R.C. 2953.08(G)(2); see also, Martin, 136 Ohio App.3d at 361. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, citing Cross v. Ledford (1954),161 Ohio St. 469, 477, 120 N.E.2d 118. An appellate court should not simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims."State v. Jones, 93 Ohio St.3d 391, 400, 2001-Ohio-1341, 754 N.E.2d 1252.
 {¶ 31} R.C. 2929.14(E)(4) sets out the findings that are required for the imposition of consecutive sentences. The first required finding is "that the consecutive sentence is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(E)(4) The second finding is that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender posed to the public." Id. Finally, the trial court must make one of the following findings:
(a) The offender committed the multiple offenses while the offender wasawaiting trial or sentencing, was under a sanction imposed pursuant tosection 2929.16, 2929.17, or 2929.18 of the Revised Code, or was underpost-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusualthat no single prison term for any of the offenses committed as part of asingle course of conduct adequately reflects the seriousness of theoffender's conduct.
 (c) The offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime by the offender.
Id.
 {¶ 32} In addition to making the requisite findings under R.C.2929.14(E)(4), the trial court must also comply with R.C. 2929.19(B)(2)(c) when imposing consecutive sentences. R.C. 2929.19(B)(2)(c) states:
(2) The court shall impose a sentence and shall make a findingthat gives its reasons for selecting the sentence imposed in anyof the following circumstances:
* * *
(c) It imposes consecutive sentences under 2929.14 of the RevisedCode, its reasons for imposing the consecutive sentences[.]
 {¶ 33} Finally, the Ohio Supreme Court has now explicitly held that "when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Comer, 99 Ohio St.3d at paragraph one of syllabus. Thus, a trial court is required to make the above findings on the record.
 {¶ 34} At the sentencing hearing, the trial court found that Major Van Horn suffered psychological harm as a result of the offense, as there was a great likelihood that physical harm or death could have occurred as a result of Jackson's actions. The court found that Jackson committed the offense for hire or as part of an organized criminal activity with Turner. The court further found that Jackson showed no genuine remorse for his conduct; in fact, that Jackson denied any criminal intent on his part. The court also took into consideration Jackson's lack of a prior record.
 {¶ 35} The court found, pursuant to R.C. 2929.12, that a prison term was consistent with the purposes and principles of sentencing and that a community control sanction would demean the seriousness of Jackson's conduct. The court also found, pursuant to R.C. 2929.13(D), that a prison term was necessary to comply with the purposes and principles of sentencing.
 {¶ 36} In determining that Jackson's prison terms should be served consecutively, the trial court found that consecutive terms were not disproportionate to Jackson's conduct. The trial court took into consideration that Jackson used his vehicle as the dangerous ordnance. The court also found that Jackson posed a danger. Therefore, the court made the finding that the harm caused by Jackson was so great or unusual that a single term did not adequately reflect the seriousness of his conduct.
 {¶ 37} Jackson maintains that the trial court erroneously found that Major Van Horn suffered psychological harm and that Jackson was involved in any drug transaction. Our review of the record indicates that there is nothing in the record that supports these findings. Major Van Horn did not indicate he suffered any physical or psychological harm in his trial testimony or his statement at the sentencing hearing. While Major Van Horn's testimony supports the finding that he believed Jackson was going to run him over with his vehicle, this only supports Jackson's conviction for felonious assault and not a finding of psychological harm to Major Van Horn. It seems that the trial court drew its inference of Major Van Horn's psychological harm from the possibility that serious physical harm or death might have resulted from Jackson's actions. However, the record does not support a finding of any actual harm to Major Van Horn.
 {¶ 38} Further, the only evidence of Jackson's involvement in the drug transaction being conducted with the confidential informant was Turner's statements that were only introduced into evidence through Officer Roberts. Jackson was never charged with any drug offense as either a principal or accomplice. While the circumstantial evidence gives the indication that Jackson was involved in the drug transaction, the state only presented evidence that supported probable cause for Jackson's detention. Jackson subsequently fled from the police and was not apprehended until over a year after the incident. Jackson's flight from the scene affected law enforcement officers' ability to obtain further information or evidence regarding his involvement in the drug transaction. Therefore, there is nothing in the record to support a finding that Jackson committed escape and felonious assault as part of any organized criminal activity.
 {¶ 39} The trial court determined that consecutive terms were not disproportionate to Jackson's conduct and that Jackson posed a danger. Further, the court determined that the harm caused by Jackson was so great or unusual that a single term did not adequately reflect the seriousness of Jackson's conduct. The court's conclusions, however, do not address the issue of proportionality of consecutive sentences to the seriousness of Jackson's conduct in this situation and the danger to the public. See State v. Eaton, 3d Dist. No. 14-04-12, 2004-Ohio-5349, at ¶ 29. There is nothing in the record that suggests Major Van Horn suffered "great or unusual" psychological harm or that Jackson committed the offenses as part of any organized criminal activity. Furthermore, the trial court acknowledged that Jackson did not have a prior record. The only finding supported by the record is Jackson's lack of remorse. Therefore, the trial court's conclusions fall below the threshold standard required to impose consecutive sentences and we must conclude that the trial court erred in sentencing Jackson consecutively. Accordingly, the second assignment of error is sustained.
 {¶ 40} Having found merit with the second assignment of error, the judgment of the Common Pleas Court of Allen County is reversed and remanded for resentencing.
Judgment Reversed and Cause Remanded.
 Rogers J., concur.