[Cite as *State v. Allsup*, 2011-Ohio-405.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,                                    CASE NO. 6-10-06

    PLAINTIFF-APPELLEE,

    v.

WAYNE TIMOTHY ALLSUP,                   **O P I N I O N**

    DEFENDANT-APPELLANT.

STATE OF OHIO,                                    CASE NO. 6-10-07

    PLAINTIFF-APPELLEE,

    v.

WAYNE TIMOTHY ALLSUP,                   **O P I N I O N**

    DEFENDANT-APPELLANT.

**Appeals from Hardin County Common Pleas Court**
**Trial Court Nos. CRI 2009 2080-CRI and 2006 2124-CRI**

**Judgments Affirmed**

**Date of Decision: January 31, 2011**

Case No. 6-10-06, 6-10-07

**APPEARANCES:**

*F. Stephen Chamberlain* **for Appellant**

*Maria Santo* **for Appellee**

**PRESTON, J.**

**{¶1}** Defendant-appellant, Wayne Timothy Allsup (hereinafter "Allsup"), appeals the Hardin County Court of Common Pleas' judgments of conviction. For the reasons that follow, we affirm.

**{¶2}** On May 5, 2009, the Hardin County Grand Jury indicted Allsup on five counts, including: count one (1) of complicity to failure to comply with an order or signal of a police officer in violation of R.C. 2923.03(A)(2) and R.C. 2921.331(B), (C)(5)(a)(ii), a third degree felony; count two (2) of complicity to felonious assault on a peace officer in violation of R.C. 2923.03(A)(2) and R.C. 2903.11(A)(2), (D)(1); count three (3) of vehicular vandalism in violation of R.C. 2909.09(B)(1), a fourth degree felony; count four (4) of complicity to vandalism in violation of R.C. 2923.03(A)(2) and R.C. 2909.05(B)(2), a fifth degree felony; and count five (5) of obstructing official business in violation of R.C. 2921.31(A), a fifth degree felony. (Doc. No. 4). This was assigned trial court case no. 2009 2080-CRI. (Id.).

**{¶3}** On May 13, 2009, Allsup filed a written plea of not guilty and not guilty by reason of insanity and a motion for an expert evaluation. (Doc. Nos. 10-11). On June 22, 2009, the trial court conducted a competency hearing and found that Allsup was competent to stand trial. (Doc. Nos. 20-21). At this hearing, Allsup also moved for the appointment of new trial counsel, which the trial court denied. (Doc. No. 21).

**{¶4}** Thereafter, on June 26, 2009, Allsup filed a motion for an independent competency evaluation, which the trial court granted. (Doc. Nos. 22-23). On September 22, 2009, the matter proceeded to a hearing wherein the trial court, again, determined that Allsup was competent to stand trial based upon the independent examiner's submitted report. (Doc. No. 27). At the hearing, counsel for defendant made an oral motion to withdraw as counsel, which the trial court granted. (Id.) The trial court then appointed new trial counsel. (Id.).

**{¶5}** On November 17, 2009, newly appointed trial counsel filed a motion requesting a hearing indicating that Allsup had terminated his representation. (Doc. No. 52). On November 23, 2009, the matter proceeded to hearing wherein the trial court denied the motion and further denied Allsup's oral motion to appoint new trial counsel. (Doc. Nos. 54-55).

**{¶6}** On February 24-25, 2010, a jury trial was held, and a guilty verdict was returned on each of the five (5) counts. (Doc. Nos. 98, 105-09). The trial

court immediately proceeded to sentencing on February 25, 2010; however, the sentence was never journalized. (Mar. 9, 2010 JE, Doc. No. 117).

{¶7} As a result of Allsup's convictions in case no. 2009 2080-CRI, the State filed a motion for revocation of Allsup's community control in case no. 2006 2124-CRI. (Doc. No. 118).

{¶8} On March 9, 2010, the trial court held a re-sentencing hearing in case no. 2009 2080-CRI and, immediately thereafter, a revocation of community control hearing in case no. 2006 2124-CRI. (Mar. 9, 2010 JE, Doc. No. 117). In case no. 2009 2080-CRI, the trial court sentenced Allsup to: three (3) years imprisonment on count one; seven (7) years imprisonment on count two; and six (6) months imprisonment on counts three, four, and five. (Id.). The trial court ordered that: the terms in counts one and two be served consecutively to each other; the terms in counts three, four, and five be served concurrently to each other for a term of six (6) months, and then consecutively to the terms imposed in counts one and two for a total prison term of ten (10) years and six (6) months. (Id.). The trial court also imposed a class one driver's license suspension as to count one and a class two driver's license suspension as to count two. (Id.). The trial court taxed defendant with court costs, appointed counsel fees, and the cost of the independent

competency evaluation, but imposed no fines. (Id.).[1]

{¶9} The trial court also found that Allsup had violated the terms of his community control by violating the law, to wit: his convictions in case no. 2009 2080-CRI. (Mar. 9, 2010 JE, Doc. No. 127). The trial court sentenced Allsup to the reserved term of eleven (11) months, and ordered that the term be served consecutively to the term of imprisonment imposed in case no. 2009 2080-CRI, for a combined sentence in both cases of eleven (11) years and five (5) months. (Id.).

{¶10} On March 9, 2010, Allsup filed his notice of appeal in case no. 2009 2080-CRI, which was assigned appellate case no. 6-10-06. (Doc. No. 119). On March 12, 2010, Allsup filed his notice of appeal in case no. 2006 2124-CRI, which was assigned appellate case no. 6-10-07. (Doc. No. 130). On April 22, 2010, this Court sua sponte ordered that case nos. 6-10-06 and 6-10-07 be consolidated for appeal.

{¶11} Allsup now appeals raising three assignments of error for our review. We elect to combine Allsup's first and second assignments of error for our review.

---

[1] It also appears that the trial court intended to order Allsup pay $1,000.00 in restitution to the City of Kenton for the insurance deductible for the repairs to the city's police cruiser. (Feb. 25, 2010 Sentencing Hearing Tr. at 466-67); (Mar. 9, 2010 Re-sentencing Hearing at 19); (Mar. 9, 2010 JE, Doc. No. 117, Ex. A). The trial court's judgment entry imposes restitution on counts two, three, four, and five as follows: "[p]ay restitution as Ordered in count one herein[]"; however, the trial court did **not** impose restitution in count one of the judgment entry. (Mar. 9, 2010 JE, Doc. No. 117).

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT BY NOT GRANTING THE DEFENDANTS [SIC] MOTION FOR ACQUITTAL AS TO COUNTS ONE AND TWO OF THE INDICTMENT.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT IN THAT THE DEFENDANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL AND THE JURY CLEARLY LOST ITS WAY.**

{¶12} In his first assignment of error, Allsup argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal. Allsup argues that motor vehicles are not deadly weapons, per se, for purposes of R.C. 2903.11(A)(2); rather, to be classified as a "deadly weapon," the State must present evidence that the defendant used the motor vehicle in a manner likely to produce death or great bodily harm. Allsup argues that the evidence at trial indicated that the motor vehicle was used merely to disable the police cruiser. Allsup also argues that the State failed to produce sufficient evidence of his complicity in counts one and two.

{¶13} In his second assignment of error, Allsup argues that his convictions on the complicity offenses are against the manifest weight of the evidence. Allsup offers in support of his second assignment of error the same reasons that he offered in support of his sufficiency argument in his first assignment of error.

{¶14} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. This court has previously found that the *Bridgeman* standard "must be viewed in light of the sufficiency of evidence test * * *." *State v. Foster* (Sept. 17, 1997), 3d Dist. No. 13-97-09, at *2.

{¶15} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶16} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. A reviewing court must, however, allow the

trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.

{¶17} With the applicable standards of review set forth, we now proceed to the facts of this case. Count one of the indictment charged Allsup with complicity to failure to comply with an order or signal of a police officer in violation of R.C. 2923.03(A)(2) and R.C. 2921.331(B), (C)(5)(a)(ii), a third degree felony. R.C. 2921.331(B) provides: "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2923.03(A)(2), the complicity statute, provides: "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. The defendant's intent may be inferred from the circumstances surrounding the crime. Id.

{¶18} After reviewing the evidence we conclude that the State presented sufficient evidence for a rational jury to conclude that Allsup aided and abetted his brother, Joe Allsup, in the offense of failure to comply with an order or signal of a police officer. Officer Robert Deckling of the Kenton City Police Department testified that, on April 3, 2009 after 11:00 p.m., he stopped, to get a snack and drink before his work shift, at a gas station convenience store named "Jumpin' Jims" located on South Main Street in Kenton. (Feb. 24-25, 2010 Tr. at 130-31). When Officer Deckling entered Jumpin' Jims, he thought he recognized Allsup, who was standing at the counter, and Officer Deckling recalled that Allsup might have an active arrest warrant. (Id. at 133); (State's Ex. 1). Officer Deckling returned to his patrol car and began to leave Jumpin' Jims' parking lot. (Feb. 24-25, 2010 Tr. at 133-35). While he was leaving, Officer Deckling radioed into the station to determine whether Allsup had any warrants, and dispatch confirmed that Allsup had an active warrant. (Id.). Officer Deckling then pulled his cruiser back into Jumpin' Jims parking lot, stepped out of his cruiser, and approached an older gray Dodge Ram pick-up truck where Allsup was seated as a passenger. (Id. at 136). As Officer Deckling approached the pick-up truck, he started to tell Allsup that he needed to step out of the vehicle since there was a pending warrant for his arrest. (Id.). At that time, Allsup denied his identity, looked over at the driver (subsequently identified as Allsup's brother Joe) and said "let's go dude" and

rolled up his window. (Id.); (Id. at 220). The driver put the truck in reverse, backed out, and quickly accelerated out of the parking lot. (Id. at 137).

{¶19} Next, Officer Deckling ran back to his cruiser, activated his overhead lights and siren, and pursued the pick-up truck south on State Route 31. (Id. at 139-40). After pursuing the pick-up truck for about two to two and a half (2-2.5) miles, the truck came to a complete stop in the middle of the road. (Id. at 140). Officer Deckling was not sure whether the truck was going to take off again or whether Allsup and his brother were going to run from the truck, so he remained in his cruiser to be cautious. (Id.). Officer Deckling estimated that the truck was stopped approximately fifteen to twenty (15-20) feet away from the front of his cruiser. (Id. at 141). Then, all of a sudden, the truck was thrown into reverse, accelerated backwards, hit the front of Officer Deckling's cruiser, and then fled south on Route 31 again. (Id.). The truck's impact crumpled the front end of the cruiser and knocked out a headlight, but did not damage the radiator, so Officer Deckling continued to pursue the pick-up truck. (Id. at 142-43). During the pursuit, Officer Deckling observed Allsup throwing what appeared to be bottles of beer and cans at his cruiser from the truck's passenger side window. (Id. at 144). Officer Deckling then shined his spot light onto the back of the truck and observed Allsup reaching through the truck's sliding rear window and throwing things from the truck bed onto the road and into the path of his cruiser. (Id.).

Officer Deckling testified that Allsup threw bottles, cans, a rake, and what appeared to be metal bars, which generated sparks when they hit the road in front of him. (Id.); (Id. at 153); (State's Ex. 6). Officer Deckling testified that he had to take evasive action to avoid hitting the objects thrown by Allsup. (Id. at 145). Officer Deckling also testified that he observed Allsup flipping him off as he was throwing things from the back of the truck. (Id. at 146-47).

{¶20} Officer Deckling further testified that Deputy Lee was eventually able to throw stop sticks out in front of the truck, which deflated the truck's right front tire. (Id. at 147-48); (Id. at 264-65). The truck continued driving on the flat tire at speeds in excess of eighty (80) miles per hour eventually causing the tire to completely shred. (Id. at 148). By this time, between seven and nine police cruisers were involved in the pursuit with their sirens and lights all activated, but the truck did not stop. (Id. at 149, 160). After an approximately 7.7 mile pursuit, the truck pulled up to a garage in a private drive. (Id. at 150, 173); (Id. at 275). Several police officers surrounded the vehicle and pulled the driver from the vehicle. (Id. at 156). Allsup, however, locked the passenger side door and refused to open it. (Id.). When officers attempted to reach for Allsup from the driver's side of the cab, Allsup kicked at them; however, officers were eventually able to pull him from the truck. (Id. at 157).

{¶21} Several other officers testified at trial concerning the high speed pursuit, as well as Allsup's failure to get out of the truck after it was stopped. (Id. at 218-20, 235-42, 253-54, 263-65, 278-82, 300-01, 317-18). A photograph was admitted into evidence showing the contents of the truck's bed, which included various items such as: beer bottles, pop cans, washer fluid, a window scraper, an alternator, a crow bar, clothing, gas cans, and other garbage. (State's Ex. 17). In addition, a photograph of the inside cab of the truck admitted into evidence showed, on the passenger's side of the cab, an empty Bud Light beer carton, which Allsup had just purchased at Jumpin' Jims prior to fleeing from Officer Deckling, as well as a full 40 ounce bottle of Cobra malt liqueur on the driver's side of the cab. (State's Exs. 13-14); (State's Ex. 1); (Feb. 24-25, 2010 Tr. at 222-23). A photograph of the rake Allsup threw onto the roadway, which was later found by law enforcement officers, was also admitted into evidence. (State's Ex. 23); (Feb. 24-25, 2010 Tr. at 144, 246-47). In addition to this photographic evidence, several videos were admitted into evidence, including the surveillance video from Jumpin' Jims, which shows the pick-up truck quickly leave the parking lot as Officer Deckling was approaching it, and several cruiser dash camera videos showing the truck in which Allsup was a passenger fleeing from the police. (State's Exs. 1-4).[2] Finally, Officer Underwood testified that, while in pursuit of the suspects, he ran

---

[2] Officer Deckling testified that his dash camera did not record the pursuit because the video camera's memory card was full. (Feb. 24-25, 2010 Tr. at 159-60).

over a leaf rake that was lying on the road. (Feb. 24-25, 2010 Tr. at 282). He further testified that he observed wet spots on the road where it appeared that bottles had broken and splattered liquid. (Id.).

{¶22} Viewing this evidence in a light most favorable to the prosecution, we cannot conclude that the trial court erred in denying Allsup's Crim.R. 29(A) motion. A rational trier of fact could conclude that the State proved beyond a reasonable doubt that Allsup supported, assisted, encouraged, cooperated with, advised, or incited his brother to willfully elude or flee a police officer after receiving a visible or audible signal to bring the truck to a stop. Specifically, the jury heard evidence that, when Officer Deckling asked Allsup to exit the vehicle at Jumpin' Jims, Allsup told his brother to leave the parking lot. The video surveillance of Jumpin' Jims supports Officer Deckling's testimony in this regard as well. Allsup made no attempt to exit the truck when it stopped prior to backing into the police cruiser. Furthermore, while Officer Deckling was in pursuit, Allsup threw beer bottles, cans, a rake, and various other pieces of metal in the path of Officer Deckling's cruiser. From this evidence, a reasonable jury could conclude that Allsup aided and abetted his brother in willfully fleeing from the police. Furthermore, after viewing this evidence, we are not persuaded that Allsup's conviction on count one was against the manifest weight of the evidence.

Therefore, Allsup's sufficiency and manifest weight arguments as to count one lack merit.

{¶23} Count two of the indictment charged Allsup with complicity to felonious assault on a police officer in violation of R.C. 2923.03(A)(2) and R.C. 2903.11(A)(2), (D)(1). The complicity statute was provided above. R.C. 2903.11(A)(2) provides: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). "An automobile, when used in a manner likely to produce death or great bodily harm, can be classified as a 'deadly weapon' under R.C. 2923.11." *State v. Tate*, 8th Dist. No. 87008, 2006-Ohio-3722, ¶23, citing *State v. Troyer* (Apr. 1, 1993), 8th Dist. No. 61983. See, also, *State v. Jackson*, 3d Dist. No. 1-04-52, 2005-Ohio-1083, ¶19, citing *State v. Overmyer*, 3d Dist. No. 11-2000-07, 2000-Ohio-1785; *State v. Allender* (Dec. 15, 1990), 5th Dist. No. CA-90-11, at *1; *State v. Casiano*, 6th Dist. Nos. WD-09-009, WD-09-010, 2010-Ohio-3528, ¶31; *State v. Evans*, 10th Dist. No. 01AP-1112, 2002-Ohio-3322, ¶22; *State v. Upham* (May 12, 1997), 12th

Dist. No. CA96-08-157, at *2. Whether the automobile was used as a deadly weapon is a question of fact for the trier of fact to determine. *Evans*, 2002-Ohio-3322, at ¶22.

**{¶24}** Regarding the events which resulted in count two of the indictment, Officer Deckling testified:

> **Q: What happened next as you recall?**
> **A: I'm not sure exactly how far out of town, one, one half miles, two, I'm not sure, I started to catch up with them and they stopped in the middle of the road.**
> **Q: They stopped?**
> **A: Stopped, dead stop in the middle of the road.**
> **Q: Truck just came to a complete halt?**
> **A: Yes.**
> **Q: What did you do when you saw that?**
> **A: Well at first I didn't know if they were gonna get out and run or if he was gonna take off again, so I was sitting in the car just waiting to see what they were gonna do.**
> **Q: So you played it cautious?**
> **A: Yeah, and then the next thing I knew the reverse lights come on and backed up and rammed my car.**
> **Q: So their vehicle was stopped, you're stopped, how far behind their vehicle do you think you**
> **A: fifteen, twenty feet, maybe, by the time I got stopped.**
> * * *

(Feb. 24-25, 2010 Tr. at 140-41). Officer Deckling testified that, when the truck slammed into the front end of his cruiser, his shin struck the dashboard causing a "minor cut," which cut was shown in a photograph identified as State's exhibit twenty-four (24). (Id. at 154, 179). When asked on cross-examination about how he had characterized the extent of the damage to the cruiser, Officer Deckling

testified, "* * * it could have been minor compared to what it could have been, I guess. Air bags didn't go off. It hit below or above that I believe." (Id. at 180-81). Officer Deckling did not require medical attention for his injury nor were his pants damaged in any way. (Id. at 196). A couple photographs of the damage sustained by the cruiser were also admitted into evidence, as well as an estimate of repair costs for the damages, which was $3,166.18. (State's Exs. 9, 19-20); (Feb. 24-25, 2010 Tr. at 206).

{¶25} After viewing this evidence in a light most favorable to the prosecution, we conclude that a rational juror could have found that the pick-up truck was used as a deadly weapon. A rational trier of fact could conclude that a pick-up truck— which sits substantially higher off the ground than a cruiser— hitting a parked cruiser from a distance of fifteen to twenty (15-20) feet would likely produce great bodily harm to the occupant. Therefore, we cannot conclude that the State failed to produce sufficient evidence as to R.C. 2903.11(A)(2)'s "deadly weapon" requirement. Furthermore, a rational juror could conclude based upon Allsup's aforementioned acts, especially that he did not attempt to exit the vehicle while it was stopped just prior to the crash, that he supported, assisted, encouraged, cooperated with, advised, or incited his brother to hit the police cruiser. Neither can we conclude that Allsup's conviction on count two was against the manifest weight of the evidence.

**{¶26}** Finally, count four of the indictment charged Allsup with complicity to vandalism in violation of R.C. 2923.03(A)(2) and R.C. 2909.05(B)(2). R.C. 2909.05(B)(2) provides: "[n]o person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. § 2901.22(B). "'Serious physical harm' means physical harm to property that results in loss to the value of the property of five hundred dollars or more." R.C. 2909.05(F)(2).

**{¶27}** As we previously noted, the jury heard evidence from which it could rationally conclude that Allsup supported, assisted, encouraged, cooperated with, advised, or incited his brother to hit Officer Deckling's cruiser. The jury also heard evidence that the damages to the cruiser were estimated at $3,166.18. (Feb. 24-25, 2010 Tr. at 206); (State's Ex. 9). As such, the State presented sufficient evidence that Allsup was complicit in knowingly causing serious physical harm to the property of a governmental entity; and furthermore, Allsup's conviction on this count is not against the manifest weight of the evidence.

**{¶28}** Allsup's first and second assignments of error are, therefore, overruled.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT IN FINDING HIM GUILTY OF A COMMUNITY CONTROL VIOLATION ABSENT PROPER PROCEDURAL DUE PROCESS.**

{¶29} In his third assignment of error,[3] Allsup argues that he was denied proper procedural due process at his revocation of community control hearing. Specifically, Allsup argues that the trial court failed to provide him: a preliminary probable cause hearing; a meaningful opportunity to present evidence or issue subpoenas; and a neutral and detached hearing body. We disagree.

{¶30} As an initial matter, Allsup did not object to the trial court's claimed due process violations at the revocation hearing. His failure to object at the revocation hearing waives all but plain error on appeal. *State v. Gilreath* (July 7, 2000), 2nd Dist. No. 2000-CA-1, at *2. The plain error doctrine permits an appellate court to reverse the judgment of the trial court if "the error * * * [is] of such nature that the outcome of the hearing would have been otherwise but for the error." *State v. Hannah*, (Dec. 15, 1998), 10th Dist. No. 98AP-518, at *2, citing *State v. Long* (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804.

{¶31} This Court has held that while a revocation of community control hearing must comport with the requirements of due process, it is not a criminal

---

[3] We note that Allsup alleged ineffective assistance of trial counsel in his brief but has failed to raise a separate assignment of error on that issue; and therefore, we decline to address it. App.R. 12(A)(2); App.R. 16(A).

proceeding. *State v. Ryan*, 3d Dist. No. 14-06-55, 2007-Ohio-4743, ¶8, citing *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656. The minimum due process requirements for such hearings are six-fold: (1) written notice of the claimed violations; (2) disclosure of the evidence against the defendant; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the fact finder as to the evidence relied on and reasons for the revocation. *State v. McKeithen*, 3rd Dist. No. 9-08-29, 2009-Ohio-84, ¶22, citing *State v. Miller* (1975), 42 Ohio St.2d 102, 104, 326 N.E.2d 259, quoting *Morrissey v. Brewer* (1972), 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484.

{¶32} The record demonstrates that Allsup was served with a copy of the motion for revocation of his supervision on March 2, 2010. (Doc. No. 120). The trial court conducted a combined re-sentencing/revocation hearing on March 9, 2010, twelve (12) days after Allsup had been convicted by a jury in case no. 2009 2080-CRI, which convictions were the basis for the revocation of his supervision. (Doc. No. 125). Allsup was present for the revocation hearing and represented by the same attorney who had represented him in the jury trial in case no. 2009 2080-CRI. Although it does not appear from the record that a preliminary probable cause hearing was held, this Court has repeatedly held that "the judgment of a trial

court revoking probation or community control sanctions will not be reversed where two separate hearings have not been held unless it appears from the record that the defendant was prejudiced by the failure to hold a preliminary hearing." *State v. Osbourn*, 3d Dist. No. 9-2000-107, 2001-Ohio-2176, citing *State v. Miller* (1975), 45 Ohio App.2d 301, 345 N.E.2d 82. See, also, *State v. Wilhite*, 3d Dist. No. 14-06-16, 2007-Ohio-116, ¶8; *State v. Marvin* (1999), 134 Ohio App.3d 63, 69, 730 N.E.2d 401. Allsup has offered no reason why the trial court's failure to hold a preliminary hearing prejudiced him. Furthermore, Allsup was afforded notice of the hearing and represented by appointed counsel who, in fact, cross-examined the State's only witness. (Mar. 9, 2010 Tr. at 11). Allsup did not take the stand, call witnesses, nor present any evidence at the hearing. Therefore, we cannot conclude that the trial court's failure to hold a preliminary hearing was plain error.

{¶33} Finally, Allsup argues that he was denied a neutral and detached hearing body because the trial court "intervened and played the role of both advocate and hearing officer." (Appellant's Brief at 22). We disagree. The record demonstrates that, at the close of direct examination of its witness, the State made a motion to withdraw its motion for revocation of Allsup's supervision. (Mar. 9, 2010 Tr. at 10). The State suggested that it had no evidence it could present at the hearing in support of its motion. (Id.). In response, the trial court stated:

> **Mr. Bailey, I'm setting here with matters in hand whereby a jury of his peers found him guilty of several criminal offenses all arising on or about April 3rd, 2009. The Court set [sic] through a two day jury trial, the Court was witness to all the sworn testimony, and you're telling this Court that I can't take judicial notice of that?**

(Id. at 11).[4] The State immediately requested that the trial court take judicial notice of that fact, which would be the State's evidence. (Id.). Thereafter, defense counsel shortly cross-examined the State's witness, and the trial court found Allsup guilty of violating the terms of his supervision. (Id. at 13). After reviewing the record, we conclude that the trial court was merely stating the basis for denying the State's motion to withdraw and nothing more. Therefore, we cannot conclude that the trial court's ruling on the State's motion to withdraw amounted to a deprivation of Allsup's procedural due process rising to plain error.

{¶34} Allsup's third assignment of error is, therefore, overruled.

{¶35} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**ROGERS, P.J., concurs.**

**/jnc**

---

[4] It appears that the trial court took judicial notice of Allsup's *conviction*, not of the testimony at trial. Regardless, the trial court held a *combined* re-sentencing hearing in case no. 2009 2080-CRI and revocation hearing in case no. 2006 2124-CRI; and therefore, the trial court was free to take judicial notice of Allsup's conviction since both cases were before the court at that time. See *State v. Smith*, 12th Dist. No. CA2009-02-038, 2010-Ohio-1721, ¶78 (trial court may take judicial notice of the proceedings in the immediate case).

**WILLAMOWSKI, J., concurs separately.**

{¶36} I concur with the majority as to upholding each of the convictions. However, I am writing separately because the conviction for complicity to commit the felonious assault is less persuasive than the others. There is substantial evidence that Allsup aided and abetted his brother by telling him "let's go dude" when stopped and encouraging him to flee in the truck from the officer. This supports the convictions for complicity to failure to comply with an order or signal of a police officer (count one). During the pursuit, the truck came to a stop. After a short time, the truck backed up and hit the officer's car, causing damage to the car. This is the basis for the charge of felonious assault on a police officer (count two). As the truck resumed fleeing from the officers, Allsup aided and abetted his brother by throwing things at the police cars from the back of the truck. These acts formed the basis of the remaining counts in the indictment for vehicular vandalism, complicity to vandalism and obstructing official business.

{¶37} In order to convict someone for complicity, the State must prove that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime. *State v. Johnson,* 93 Ohio St.3d 240, 2001-Ohio-2163, 754 N.E.2d 796. The defendant's participation may be inferred from his behavior before and after the offense occurs. Id. Here, there is evidence that Allsup encouraged his brother to flee and that he took steps to evade the

police once they were fleeing. However, when the truck stopped, there is no direct evidence and very little circumstantial evidence that Allsup encouraged, supported, assisted, cooperated with, advised, or incited his brother to back the truck into police car. The majority relies upon the fact that he did not attempt to get out of the truck when it was stopped, but the evidence indicates there was only a short time between when the truck stopped and when it backed into the police car. The officer testified that he had not exited his car and was not sure if the driver was just going to take off again or if they were going to exit the vehicle and run. The mere fact that Allsup aided and abetted his brother's fleeing by throwing things into the path of the vehicle after the fact does not necessarily indicate that he wanted his brother to back into the police car, but rather that after it was done, he did not want to be caught. The fact that one merely helps someone escape after the offense is committed is insufficient to convict them of complicity to commit the underlying offense. See *State v. Ratkovich*, 7th Dist. No. 02-JE-16, 2003-Ohio-7286.

**{¶38}** Additionally, to convict one of felonious assault, the State must prove that the defendant *knowingly* caused physical harm to another. The State presented no direct evidence and very little circumstantial evidence that Allsup knew that his brother would back the car into the police car. There also was no direct evidence presented that the intent of the act was to cause physical harm to

the officer rather than merely disable the vehicle. If I had been on the jury, I may not have agreed that the State satisfied its burden of proof as to this issue.

**{¶39}** When reviewing a case to see if the conviction is against the manifest weight of the evidence, the appellate court does sit as a thirteenth juror. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 514. However, the appellate court should still give due deference to the findings made by the fact-finder. Id.

> **The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. *Thompkins*, supra at 387. After reviewing the evidence, I do not find that it weighs heavily against conviction. Thus, I must give due deference to the fact-finder and find that the conviction is not against the manifest weight of the evidence even though I may have reached a different conclusion. For this reason, I concur separately.